# 25-1136

## United States Court of Appeals for the Second Circuit

WANTAGH UNION FREE SCHOOL DISTRICT,

*Plaintiffs-Appellants,*

WYANDANCH UNION FREE SCHOOL DISTRICT,

*Plaintiffs,*

v.

NEW YORK STATE BOARD OF REGENTS,

*Defendants-Appellees.*

*(caption continues inside front cover)*

On Appeal from the United States District Court
for the Eastern District of New York

## BRIEF FOR APPELLEES

BARBARA D. UNDERWOOD
  *Solicitor General*
JUDITH N. VALE
  *Deputy Solicitor General*
STEPHEN J. YANNI
  *Assistant Solicitor General*
    *of Counsel*

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellee
28 Liberty Street
New York, New York 10005
(212) 416-6184

Dated: November 10, 2025

*(caption continued from front cover)*

WANTAGH UNION FREE SCHOOL DISTRICT BOARD OF EDUCATION, ANTHONY GRECO, in his capacity as a Wantagh Board of Education Member and a Resident of the School Community,

*Plaintiffs-Appellants*,

WYANDANCH UNION FREE SCHOOL DISTRICT BOARD OF EDUCATION, CHARLIE REED, in his capacity as a Wyandanch Board of Education Member and a Resident of the School Community,

*Plaintiffs*,

v.

LESTER W. YOUNG, JR., in his official capacity as Chancellor of the New York State Board of Regents, JOSEPHINE VICTORIA FINN, in her official capacity as Vice Chancellor of the New York State Board of Regents, ROGER TILLES, in his official capacity as a member of the New York State Board of Regents, CHRISTINE D. CEA, in her official capacity as a member of the New York State Board of Regents, WADE S. NORWOOD, in his official capacity as a member of the New York State Board of Regents, KATHLEEN M. CASHIN, in her official capacity as a member of the New York State Board of Regents, JAMES E. COTRELL, in his official capacity as a member of the New York State Board of Regents, JUDITH CHIN, in her official capacity as a member of the New York State Board of Regents, CATHERINE COLLINS, in her official capacity as a member of the New York State Board of Regents, ELIZABETH S. HAKANSON, in her official capacity as a member of the New York State Board of Regents, LUIS O. REYES, in his official capacity as a member of the New York State Board of Regents, SUSAN W. MITTLER, in her official capacity as a member of the New York State Board of Regents, FRANCES G. WILLS, in her official capacity as a member of the New York State Board of Regents, ARAMINA VEGA FERRER, in her official capacity as a member of the New York State Board of Regents, SHINO TANIKAWA, in her official capacity as a member of the New York State Board of Regents, ROGER P. CATANIA, in his official capacity as a member of the New York State Board of Regents, ADRIAN I. HALE, in his official capacity as a member of the New York State Board of Regents,

*Defendants-Appellees*.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................iii

PRELIMINARY STATEMENT ............................................................. 1

ISSUES PRESENTED ......................................................................... 5

STATEMENT OF THE CASE ............................................................... 6

    A.   New York State Education Department's Regulations Prohibiting the Use of Indigenous Names, Logos, and Symbols as Mascots ........................................................ 6

    B.   Wantagh Union Free School District's Use of an Indigenous Name and Logo ...................................................... 11

    C.   The District Court's Dismissal of Plaintiffs' Constitutional Challenge to Part 123 .................................... 13

STANDARD OF REVIEW .................................................................. 17

SUMMARY OF ARGUMENT .............................................................. 18

ARGUMENT ..................................................................................... 21

POINT I

MUNICIPAL PLAINTIFFS LACK CAPACITY TO CHALLENGE THE CONSTITUTIONALITY OF STATE REGULATIONS ...................................... 21

POINT II

GRECO IN HIS PERSONAL CAPACITY LACKS STANDING TO CHALLENGE PART 123'S REGULATION OF PUBLIC SCHOOLS ................. 31

i

**Page**

POINT III

THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' OVERBREADTH AND VAGUENESS CLAIMS .............................................. 35

    A.   Part 123 Is Not Overbroad Under the First Amendment...... 35

    B.   Part 123 Is Not Void for Vagueness Under the Fourteenth Amendment. ......................................................... 39

        1.   Part 123 is not void for vagueness as applied to plaintiffs......................................................... 41

        2.   Part 123 is not void for vagueness on its face. ................ 43

POINT IV

THE DISTRICT COURT CORRECTLY DISMISSED GRECO'S FIRST AMENDMENT FREE SPEECH CLAIM ....................................................... 49

    A.   The Supreme Court's Precedents on Government Employee Speech Apply to This Case.................................... 51

    B.   Greco Did Not Plausibly Allege That His Speech Involves a Matter of Public Concern. .................................... 53

    C.   In Any Event, § 123.5 Satisfies the Balancing Test for Government Employee Free Speech Claims. ......................... 57

CONCLUSION ...................................................................... 60

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Advance Pharm., Inc. v. United States,*
391 F.3d 377 (2d Cir. 2004) ............................................................ 43

*Agosto v. New York City Dep't of Educ.,*
982 F.3d 86 (2d Cir. 2020) .......................................................55-56

*Aguayo v. Richardson,*
473 F.2d 1090 (2d Cir. 1973) ........................................................ 26

*Arriaga v. Mukasey,*
521 F.3d 219 (2d Cir. 2008) .......................................................... 40

*Blakeman v. James,*
No. 24-cv-1655, 2024 WL 3201671 (E.D.N.Y. Apr. 4, 2024) ............. 24

*Bob Jones Univ. v. United States,*
461 U.S. 574 (1983) ...................................................................... 57

*Boquist v. Courtney,*
32 F.4th 764 (9th Cir. 2022) ......................................................... 52

*Brokamp v. James,*
66 F.4th 374 (2d Cir. 2023) ............................................ 19, 32, 43-46

*Church of the Am. Knights of the Ku Klux Klan v. Kerik,*
356 F.3d 197 (2d Cir. 2004) .......................................................... 54

*City of New York v. Richardson,*
473 F.2d 923 (2d Cir. 1973) .......................................................... 26

*City of New York v. State,*
86 N.Y.2d 286 (1995) .................................................... 18, 21-23, 25

*City of San Diego v. Roe,*
543 U.S. 77 (2004) ........................................................................ 54

iii

**Cases**                                                                 **Page(s)**

*City of Trenton v. New Jersey,*
262 U.S. 182 (1923) ........................................................... 26

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ........................................................... 34

*Clarke v. Town of Newburgh,*
237 A.D.3d 14 (2d Dep't 2025) ........................................... 23

*Connick v. Myers,*
461 U.S. 138 (1983) ........................................................... 53

*Copeland v. Vance,*
893 F.3d 101 (2d Cir. 2018) ................................................ 40

*Davis v. FEC,*
554 U.S. 724 (2008) ........................................................... 31

*Downs v. Los Angeles Unified Sch. Dist.,*
228 F.3d 1003 (9th Cir. 2000) ............................................ 33

*Farrell v. Burke,*
449 F.3d 470 (2d Cir. 2006) .................................... 29, 35-36

*FDA v. Alliance for Hippocratic Med.,*
602 U.S. 367 (2024) ....................................................... 31-32

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.,*
991 F.3d 370 (2d Cir. 2021) ........................................ 17, 21

*Garcetti v. Ceballos,*
547 U.S. 410 (2006) ........................................................... 38

*Gitlow v. New York,*
268 U.S. 652 (1925) ........................................................... 26

*Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.,*
252 F.3d 545 (2d Cir. 2001) ................................................ 52

| Cases | Page(s) |
|---|---|

*Grayned v. City of Rockford,*
  408 U.S. 104 (1972) ................................................................. 45, 57

*Guthrie Nat'l Bank v. City of Guthrie,*
  173 U.S. 528 (1899) ....................................................................... 25

*Hill v. Colorado,*
  530 U.S. 730 (2000) ....................................................................... 46

*Holder v. Humanitarian L. Project,*
  561 U.S. 1 (2010) ........................................................................... 44

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.,*
  846 F.3d 58 (2d Cir. 2017) ............................................................ 23

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.,*
  412 F.3d 418 (2d Cir. 2005) ..................................................... 27, 52

*JWJ Indus. v. Oswego County,*
  538 F. App'x 11 (2d Cir. 2013) ..................................................... 43

*Kirkpatrick v. Village of Washingtonville,*
  491 F. App'x 214 (2d Cir. 2012) ................................................... 53

*Latino Officers Ass'n, N.Y., Inc. v. City of New York,*
  196 F.3d 458 (2d Cir. 1999) ................................................. 51, 55, 57

*Latino Officers Ass'n v. Safir,*
  170 F.3d 167 (2d Cir. 1999) ..................................................... 52-53

*Lewis v. Cowen,*
  165 F.3d 154 (2d Cir. 1999) ......................................................... 53

*Matter of Board of Educ., Commack Union Free Sch.*
  *Dist. v. Ambach,*
  70 N.Y.2d 501 (1987) .................................................................... 51

| Cases | Page(s) |
|---|---|

*Matter of Board of Educ. of Roosevelt Union Free Sch. Dist. v. Board of Trs. of State Univ. of N.Y.*,
282 A.D.2d 166 (3d Dep't 2001) ........................................................ 22

*Matter of Cambridge Cent. Sch. Dist. v. New York State Educ. Dep't*,
Index No. 902161-22 (Sup. Ct. Albany County June 22, 2022) .......... 8

*Matter of County of Nassau v. State*,
100 A.D.3d 1052 (3d Dep't 2012) ...................................................... 25

*Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
30 N.Y.3d 377 (2017) ............................................................... 22, 26

*Matthews v. City of New York*,
779 F.3d 167 (2d Cir. 2015) ............................................................. 50

*Merola v. Cuomo*,
427 F. Supp. 3d 286 (N.D.N.Y. 2019) ............................................... 27

*New York Blue Line Council, Inc. v. Adirondack Park Agency*,
86 A.D.3d 756 (3d Dep't 2011) ......................................................... 26

*Pickering v. Board of Educ. of Twp. High Sch. Dist. 205*,
391 U.S. 563 (1968) .................................................................. 50-51

*Piscottano v. Murphy*,
511 F.3d 247 (2d Cir. 2007) .................................................. 55, 58-59

*Pleasant Grove City v. Summum*,
555 U.S. 460 (2009) ......................................................................... 37

*Rock of Ages Corp. v. Secretary of Labor*,
170 F.3d 148 (2d Cir. 1999) ............................................... 40, 42, 46

*Scott v. Meyers*,
191 F.3d 82 (2d Cir. 1999) ............................................................... 49

| Cases | Page(s) |
|---|---|

*Shara v. Maine-Endwell Cent. Sch. Dist.*,
  46 F.4th 77 (2d Cir. 2022)............................................................. 53, 56

*Siefert v. Alexander*,
  608 F.3d 974 (7th Cir. 2010)................................................................. 52

*Slattery v. Hochul*,
  61 F.4th 278 (2d Cir. 2023)................................................................. 40

*Sullivan v. University of Wash.*,
  60 F.4th 574 (9th Cir. 2023) .............................................................. 52

*Thibodeau v. Portuondo*,
  486 F.3d 61 (2d Cir. 2007) ................................................................. 39

*United States v. Concepcion*,
  139 F.4th 242 (2d Cir. 2025)............................................................... 45

*United States v. Farhane*,
  634 F.3d 127 (2d Cir. 2011) .............................................................. 46

*United States v. National Treasury Emps. Union*,
  513 U.S. 454 (1995)...................................................... 21, 49-50, 52

*United States v. Smith*,
  945 F.3d 729 (2d Cir. 2019) .......................................................... 32-33

*United States v. Thompson*,
  896 F.3d 155 (2d Cir. 2018) ......................................................... 36, 38

*United States v. Williams*,
  553 U.S. 285 (2008)........................................................................... 30

*Vermont Right to Life Comm., Inc. v. Sorrell*,
  758 F.3d 118 (2d Cir. 2018) .............................................................. 43

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982)......................................................... 36, 40, 43, 46

| Cases | Page(s) |
|---|---|

*Washington State Grange v. Washington State Republican Party,*
552 U.S. 442 (2008)............................................................ 37

*Washington v. Seattle School District No. 1,*
458 U.S. 457 (1982)............................................................ 26

*Werkheiser v. Pocono Township,*
780 F.3d 172 (3d Cir. 2015) ............................................. 52

*Williams v. Mayor of Baltimore,*
289 U.S. 36 (1933)............................................................. 26

*Wright v. Ernst & Young LLP,*
152 F.3d 169 (2d Cir. 1998) ............................................. 34

*Ysursa v. Pocatello Educ. Ass'n,*
555 U.S. 353 (2009)............................................. 19, 25, 36

*Zalewska v. County of Sullivan,*
316 F.3d 314 (2d Cir. 2002) ............................................. 54

## Constitutions

N.Y. Const., art. XI, § 1 .......................................................... 6

U.S. Const.
amend. I ............................................................................ 25
amend. XIV, § 1......................................................... 25, 39

## State Statutes

N.Y. Educ. Law
§ 11 ...............................................................................8, 57
§ 12 ..................................................................................... 8
§ 101 ................................................................................... 6
§ 207 ................................................................................... 6
§ 305 ................................................................................... 6

**State Statutes**                                                 **Page(s)**

N.Y. Educ. Law

§ 306 ................................................................................ 51

§ 309 .................................................................................. 6

N.Y. Gen. Constr. Law § 66 .................................................. 22

**State Regulations**

8 N.Y.C.R.R.

§ 123.1 ............................................................ 9, 41, 45, 48

§§ 123.1-123.4 ........................................................... 1, 24

§§ 123.1-123.5 ........................................................... 8, 45

§ 123.2 ............................................................................ 9

§ 123.3 ............................................................. 10, 28, 49

§ 123.4 ............................................................... 9, 48, 59

§ 123.5 ................................................................... passim

# PRELIMINARY STATEMENT

In 2001, the New York State Education Department (NYSED) determined that the continued use by public schools of Native American (or "Indigenous") names and symbols as mascots is detrimental to students and school communities. Many school districts then voluntarily retired such names and symbols, but others did not. In 2022, a state court upheld a ruling by NYSED's commissioner that public schools' continued use of Indigenous names and symbols risked violating state law prohibiting hostile learning environments. In response, NYSED promulgated Part 123 of the Regulations of the Commissioner of Education requiring all public schools within the State to eliminate Indigenous names, logos, or mascots other than for purposes of classroom instruction by the end of the 2024-2025 school year. 8 N.Y.C.R.R. §§ 123.1-123.4. Part 123 also prohibits school officers and employees from utilizing or promoting Indigenous names, logos, or mascots while on school property or at school functions. *Id.* § 123.5.

At the time Part 123 took effect, Wantagh Union Free School District was using the name "Warriors" and a logo featuring a Native American man in full headdress. The district agreed to voluntarily retire its logo but

refused to retire the name "Warriors." Instead, the district, its board of education, and an individual board member, Anthony Greco, brought this federal action challenging the constitutionality of Part 123 under the First and Fourteenth Amendments of the U.S. Constitution. The U.S. District Court for the Eastern District of New York (Brodie, C.J.) dismissed the complaint, ruling that the school district and its officers lack capacity to challenge the constitutionality of Part 123, and that Greco failed to state a valid claim in his individual capacity. This Court should affirm.

*First*, the school district and school board plaintiffs lack capacity to challenge Part 123. Longstanding New York law provides that municipal corporations, including school districts, lack capacity to sue to challenge the constitutionality of state statutes and regulations. Contrary to plaintiffs' argument, they do not qualify for a narrow exception to the capacity bar that allows a municipal corporation to challenge a state law where compliance with that law would require the municipal corporation to violate a constitutional proscription. Plaintiffs failed to plausibly allege that complying with Part 123 would require them to violate any individual's First or Fourteenth Amendment rights.

*Second*, although the capacity bar does not apply to Greco suing in his individual capacity, he lacks standing to challenge Part 123's regulation of schools' conduct. Greco does not allege an injury in fact caused to him by Part 123's mandate that schools eliminate Indigenous names, logos, and mascots. Instead, his only asserted injury stems from his inability to wear prohibited "Wantagh Warriors" apparel at school games and events, but that alleged injury is traceable only to § 123.5 and does not give Greco standing to challenge Part 123 in its entirety. Greco's standing is thus limited to his claims challenging § 123.5.

*Third*, plaintiffs failed to state a First Amendment overbreadth claim because Part 123's regulation of public schools' names, logos, and mascots (§§ 123.1-123.4) regulates the schools' government speech and thus does not implicate any protected speech. And plaintiffs do not attempt to show that § 123.5's limited restriction on school officers and employees while on school property or at school events implicates a substantial amount of protected speech in relation to that provision's plainly legitimate applications.

*Fourth*, plaintiffs' Fourteenth Amendment vagueness claims fail because plaintiffs had ample notice that the name "Warriors," as used by

3

Wantagh, refers to Indigenous persons and cultures within the meaning of Part 123. Indeed, NYSED issued guidance explaining that names previously used in conjunction with Indigenous imagery are prohibited.

*Finally*, Greco did not plausibly allege that Part 123 constitutes an unlawful prior restraint on his speech. As the district court correctly found, Greco's general desire to communicate support for the school community by wearing prohibited Warriors apparel does not constitute a matter of public concern entitled to First Amendment protection. And his post hoc assertion that he will wear the apparel to protest Part 123 appears nowhere in the complaint. In any event, NYSED's interest in enforcing Part 123 in order to ensure a learning environment free from discrimination and harassment outweighs Greco's interest in the particular form of personal expression he seeks to exercise while off duty on school property or at a school function.

## ISSUES PRESENTED

1. Whether the district court correctly concluded that the school district and school board plaintiffs lack capacity to challenge the constitutionality of Part 123.

2. Whether Greco in his personal capacity lacks standing to challenge the constitutionality of Part 123's regulation of the conduct of public schools.

3. Whether the district court correctly dismissed plaintiffs' overbreadth and vagueness claims for failure to state a claim.

4. Whether the district court correctly dismissed Greco's personal free speech claim for failure to state a claim.

## STATEMENT OF THE CASE

### A. New York State Education Department's Regulations Prohibiting the Use of Indigenous Names, Logos, and Symbols as Mascots

The New York State Constitution directs the Legislature to "provide for the maintenance and support of a system of free common schools" to educate the State's children. N.Y. Const. art. XI, § 1. The Legislature has empowered the Board of Regents, through the New York State Education Department (NYSED), to "establish rules for carrying into effect the laws and policies of the state, relating to education." N.Y. Educ. Law § 207; *see id.* § 101. The Commissioner of Education "is the chief executive officer of the state system of education and of the board of regents." *Id.* § 305(1). School districts including Wantagh are "subject to the visitation of the commissioner," who exercises "general supervision of their boards of education and their management and conduct of all departments of instruction." *Id.* § 309; *see id.* § 305(2).

In 2001, the Commissioner issued a memorandum calling upon public school administrators in New York to discontinue the use of Native American names and symbols as mascots. After carefully considering competing interests, the Commissioner "concluded that the use of Native American

6

symbols or depictions as mascots can become a barrier to building a safe and nurturing school community and improving academic achievement for all students." (A. 44.) That determination was based on extensive research and discussion and followed the elimination of Native American mascots at more than 600 secondary and postsecondary schools across the country over the preceding thirty years. (A. 44-45.)

After the 2001 memorandum, many school districts in the State retired their Indigenous names, logos, and mascots, but others did not. (A. 48.) In 2021, Cambridge Central School District in upstate New York reinstated its Indigenous team name and logo after having previously retired them. (A. 37.) The Commissioner sustained a challenge to that decision, finding that Cambridge had not sufficiently explained its change in position. (A. 38-39.) The Commissioner also concluded that Cambridge's continued use of the Indigenous name and logo ran counter to the prevailing professional opinion that the use of Indigenous mascots, symbols, and imagery negatively impacts both Indigenous and non-Indigenous students by reinforcing stereotyping and prejudices. (A. 39-40.) In addition, Cambridge's actions risked violating New York's Dignity for All Students Act (DASA), which prohibits "the creation of a hostile environment . . . that

7

reasonably causes or would reasonably be expected to cause . . . emotional harm to a student," including acts based on a person's actual or perceived race, national origin, or ethnic group, Educ. Law § 11(7); *see id.* § 12. (A. 40.) In November 2022, a New York State court upheld the Commissioner's ruling. *Matter of Cambridge Cent. Sch. Dist. v. New York State Educ. Dep't*, Index No. 902161-22 (Sup. Ct. Albany County June 22, 2022), *appeal dismissed*, 222 A.D.3d 1068 (3d Dep't 2023).

Shortly after the state court's ruling in the *Cambridge* case, NYSED issued a memorandum explaining that the court's decision confirmed, consistent with NYSED's 2001 memorandum, that "public school districts are prohibited from utilizing Native American mascots." (*See* A. 49.) NYSED signaled its intent to promulgate regulations to that end. (A. 49.) In December 2022, NYSED commenced a proposed rulemaking. (A. 108-118.) The agency explained that it was acting under statutory authority requiring the Commissioner to promulgate regulations to assist schools in implementing DASA. (A. 111 (citing Educ. Law § 14(3)).) After a public comment period (*see* A. 103-107), the Board of Regents approved Part 123 of the Regulations of the Commissioner of Education, 8 N.Y.C.R.R. §§ 123.1-123.5 (reproduced at A. 97-98).

Part 123, which became effective in May 2023, provides that "no public school in the State of New York may utilize or display an Indigenous name, logo, or mascot other than for purposes of classroom instruction." 8 N.Y.C.R.R. § 123.2. The regulation defines "Indigenous name, logo, or mascot" to mean "a name, symbol, or image that depicts or refers to Indigenous persons, tribes, nations, individuals, customs, symbols, or traditions, including actual or stereotypical aspects of Indigenous cultures, used to represent a public school, including but not limited to such school[']s sports teams." *Id.* § 123.1. The definition "does not include a public school, school building, or school district named after an Indigenous tribe." *Id.* The regulation contains exceptions for the sports teams of tribal nations composed of tribal members, *id.* § 123.4(a), and for any public school that, as of Part 123's enactment, had entered into a written agreement with a federally or state-recognized tribe permitting "the use of an Indigenous name, mascot, or logo that is culturally affiliated with such tribe," *id.* § 123.4(b).

Part 123 also sets forth a timeline for implementation. The regulation requires school boards to have adopted resolutions by the end of the 2022-2023 school year committing to eliminate Indigenous names, logos, and mascots and establishing a plan for doing so by the end of the

9

2024-2025 school year. *Id.* § 123.3(a). The Commissioner can extend these deadlines for good cause. *Id.* § 123.3(b).

Finally, Part 123 contains a prohibition on the use and promotion of Indigenous names, logos, or mascots by school officers and employees "when located on school property or at a school function." *Id.* § 123.5. The provision contains a limited exception for members of tribal nations. *Id.*

NYSED issued guidance to accompany Part 123 to provide additional background information and address frequently asked questions. (A. 24-34.) The guidance explains that Part 123's prohibition on Indigenous names, logos, and mascots includes:

> [a]ny team name, mascot, or logo that has any connection to Indigenous peoples in the past or present, including logos that incorporate symbols associated with Indigenous peoples such as feathers, historical weapons like tomahawks or spears, or logos utilizing stylization generally attributable to or in association with Indigenous peoples such as feathers or traditional Indigenous clothing.

(A. 29.) And "districts that currently use[] or previously used team names associated with Indigenous imagery or symbols must change their team's name." (A. 29.) The guidance explains that, even when Indigenous imagery is changed or removed, the team name previously associated with such imagery continues to bear its prior "connection, connotations, and history."

10

(A. 29.) Public schools' continued use of such names "contributes to the continued stereotyping, caricaturing, and denigration of Indigenous peoples." (A. 29.) Accordingly, the guidance directs schools with such names to "take this opportunity to re-brand, as many districts across the state have already done." (A. 29.)

**B.   Wantagh Union Free School District's Use of an Indigenous Name and Logo**

Wantagh Union Free School District is located in the Incorporated Village of Wantagh in Nassau County, New York. The village and school district are named for Chief Wantagh, who led the Montauk Tribe in the mid-1600s. (A. 60-61.) In 1956, the school district adopted the "Wantagh Warriors" name and logo, "which depicts the profile of a Native American in full headdress." (A. 62.) Both Wantagh High School and Wantagh Middle School adopted the name and logo. (A. 62.)

After Part 123 took effect, the Wantagh Board of Education decided that it would retire the district's Indigenous imagery but "fight to keep the 'Warrior' name." (A. 70.) In June 2023, the school district submitted a plan to NYSED acknowledging that the district's current imagery was clearly implicated by Part 123. (A. 70-71.) The district proposed retiring that

11

imagery while retaining the Warriors name. NYSED denied the district's request. (A. 71.) Following this denial, the school board revised its plan "for the sole purpose of complying with Part 123" (A. 72) and "passed a resolution with a plan to eliminate the use of prohibited Indigenous names, mascots and logos by the end of the 2024-2025 school year." (A. 73.) Under the resolution, the school board agreed to eliminate the Warriors name but purported to reserve the board's right to challenge the legality of Part 123.[1] (*See* A. 73.)

One board member, plaintiff Anthony Greco, objected that Part 123 would prohibit him from wearing his Warriors apparel at school events. Greco has a large collection of Warriors apparel, which he wears to sports games and other school functions. (A. 91-92.) He regularly attends sporting events at Wantagh High School to support his nieces and "attends games and functions to support the school community in general." (A. 91.) He wears his Warriors apparel "to support . . . student athletes" and "the

_____

[1] In the meantime, Wantagh received an extension to June 2026 to come into compliance with Part 123. *See* Compl., Ex. H, *Wantagh Union Free Sch. Dist. v. New York State Bd. of Regents*, Index No. 619599/2025 (Sup. Ct. Nassau County Sept. 11, 2025), NYSCEF No. 1 (Letter from David M. Frank, Assistant Comm'r for Educ. Pol'y, NYSED, to John McNamara, Superintendent, Wantagh Union Free Sch. Dist. (Apr. 29, 2025)).

community as a whole." (A. 92.) According to Greco, he acts as a spectator and not as a board member when he "sits in the stands with his wife to watch their family member[s'] sports games." (A. 92.) Section 123.5 prohibits Greco, as an officer of the school district, from wearing the Warriors apparel "when located on school property or at a school function." *See* 8 N.Y.C.R.R. § 123.5.

## C.   The District Court's Dismissal of Plaintiffs' Constitutional Challenge to Part 123

In September 2023, Wantagh Union Free School District, its board of education, and Greco brought this lawsuit in the U.S. District Court for the Eastern District of New York against the New York State Board of Regents and its members in their official capacities.[2] (A. 8, 51-52.) All plaintiffs asserted that Part 123 is impermissibly overbroad and vague under

_____

[2] Wyandanch Union Free School District and related parties were co-plaintiffs in the district court below. (A. 52.) The Wyandanch plaintiffs did not appeal the district court's order of dismissal. In addition, the district court's dismissal order resolved related actions brought by Connetquot Central School District and Massapequa Union Free School District raising similar claims. (A. 204-205.) The Connetquot and Massapequa plaintiffs also did not appeal. A fourth related action brought by Amityville Union Free School District was voluntarily discontinued prior to the district court's order of dismissal. (A. 205 n.1.)

13

the First and Fourteenth Amendments. And Greco in his individual capacity asserted that Part 123 violated his First Amendment right to free speech. (A. 85-92.) In addition, plaintiffs asserted a separation-of-powers claim under the U.S. Constitution and various claims under New York law. (A. 80-85.) Plaintiffs sought declaratory and injunctive relief prohibiting defendants from enforcing Part 123. (A. 93.)

The district court granted defendants' motion to dismiss the complaint in a thorough 89-page memorandum and order. (A. 200-288.)

*First*, the district court determined that Wantagh Union Free School District, its school board, and Greco in his official capacity (together, "municipal plaintiffs") lacked capacity to bring a constitutional challenge to Part 123. Under New York law, municipal corporations generally lack capacity to challenge the constitutionality of state actions. (A. 216.) And municipal plaintiffs failed to establish that they qualify for a narrow exception to the capacity bar applicable only when a state law would require a municipal corporation to violate a constitutional proscription. As the court explained, municipal plaintiffs did not plausibly allege that complying with Part 123 would force them to violate any constitutional proscription here, and instead broadly alleged that the mere existence of Part 123 "creates an

14

unnecessary risk of chilling the speech and expression of school employees, and the school community at large." (A. 225 (quotation marks omitted).)

*Second*, the district court concluded that Greco in his individual capacity failed to state a claim on any of the theories presented in the complaint. The district court rejected Greco's First Amendment free speech and overbreadth claims.[3] On the free speech claim, the court determined that Greco plausibly alleged that he spoke as a citizen rather than as a school board member (A. 266-267), and that "a school district's team names, logos, and mascots when worn on school team apparel [are] not government speech" (A. 254). But the court ruled that Greco failed to allege that his desire to wear prohibited Warriors apparel implicated speech on a matter of public concern within the scope of the First Amendment. (A. 250.) Greco alleged that he wears his Warriors apparel to support the school community in general (A. 267), but he did not allege that his "association with the Indigenous team names, logos, and mascots are related to any matter of political, social, or other concern to the community" (A. 268

---

[3] The district court also dismissed Greco's free speech claim under the New York State Constitution, which was subject to the same analysis. (A. 260-261 n.22.)

15

(quotation and alteration marks omitted)). Although plaintiffs had argued, in opposition to defendants' motion to dismiss, that wearing prohibited Warriors apparel is an act of protest against Part 123, the district court declined to consider that argument because the complaint alleged no facts to support it. (A. 268 n.25.) Plaintiffs' failure to allege that Part 123 prohibits the speech of school officers and employees on matters of public concern likewise defeated Greco's overbreadth claim. (A. 250-251.)

The district court also rejected Greco's facial and as-applied claims that Part 123 is void for vagueness under the Fourteenth Amendment. The court found that Part 123's definition of "Indigenous name, logo, or mascot" is sufficiently definite to provide fair warning of what the regulation requires, and that Greco was "on notice of the pre-existing history tying the Warriors' name to actual or stereotypical aspects of Indigenous peoples." (A. 235-236.) The court also determined that Part 123 "provides clear standards through which schools can determine whether their names, logos, and mascots are prohibited" (A. 240) and that NYSED's accompanying guidance resolves any purported vagueness concerns (A. 240-241). Because Part 123 was not void for vagueness as applied to Greco, Greco necessarily failed to establish that there is no set of circumstances under which

16

the regulation is valid, as required to prevail on his facial challenge. (A. 242-243.)

*Finally*, the district court dismissed Greco's federal separation-of-powers claim as abandoned and meritless (A. 270 n.27) and declined to exercise supplemental jurisdiction over plaintiffs' remaining state law claims (A. 211, 270-277).[4] Rather than amend the complaint to allege specific facts in support of Greco's First Amendment claims, as the district court had invited plaintiffs to do (A. 287-288), plaintiffs requested that the district court enter final judgment and proceeded to file this appeal (A. 21).

## STANDARD OF REVIEW

This Court reviews de novo the dismissal of a complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or failure to state a claim under Rule 12(b)(6). *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 379 (2d Cir. 2021).

---

[4] Plaintiffs have since commenced a separate state court action asserting a state-law separation-of-powers claim and a federal preemption claim. Compl. ¶¶ 128-155, *Wantagh Union Free Sch. Dist.*

17

## SUMMARY OF ARGUMENT

I. Municipal plaintiffs lack capacity to challenge the constitutionality of Part 123. New York law strictly limits when municipal corporations such as school districts may sue the State. In general, municipal corporations and their officers lack capacity to challenge the constitutionality of state statutes and regulations. *City of New York v. State*, 86 N.Y.2d 286, 289 (1995). Municipal plaintiffs miss the mark in invoking the constitutional-proscription exception to the capacity rule because they do not plausibly allege that changing their schools' name and logo to comply with Part 123 causes them to violate any individual's constitutional rights. Nor do municipal plaintiffs plausibly allege that enforcing § 123.5 will cause such a violation.

II. Although the capacity bar does not apply to Greco suing in his individual capacity, he lacks standing to challenge Part 123's regulation of the conduct of public schools. Greco's only alleged injury—that he is prohibited from wearing apparel featuring Wantagh's Indigenous name or logo—arises entirely from § 123.5, which governs the conduct of school officers and employees. And his standing to challenge that discrete provision does not confer standing to challenge other aspects of the regulation, which

govern the conduct of public schools. *See Brokamp v. James*, 66 F.4th 374, 390 (2d Cir. 2023).

III. Alternatively, if any of the plaintiffs had capacity and standing to challenge Part 123's prohibition on public schools' use of Indigenous names, logos, and mascots (§§ 123.1-123.4), their challenges based on overbreadth and vagueness would nonetheless be subject to dismissal for failure to state a claim. To the extent Greco in his personal capacity asserts overbreadth and vagueness challenges to § 123.5, his claims similarly fail.

With respect to plaintiffs' overbreadth claim, Part 123's regulation of schools' ability to select certain names, logos, and mascots does not implicate any protected speech. Municipal corporations such as school districts have no enforceable First Amendment rights vis-à-vis the State that created them. *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 363 (2009). And a public school's use of its own name, logo, or mascot is government speech not protected by the First Amendment. Only § 123.5's restrictions on school officers and employees could arguably implicate protected speech. But plaintiffs do not allege that this provision reaches a substantial amount of protected speech in relation to its plainly legitimate sweep.

19

With respect to plaintiffs' as-applied vagueness claim, plaintiffs did not plausibly allege that they lacked notice that the name "Warriors" refers to Indigenous persons and cultures within the meaning of Part 123. Indeed, NYSED issued guidance explaining that names previously used in conjunction with Indigenous imagery are prohibited. And when plaintiffs consulted with NYSED concerning the Warriors name, the agency informed them that they could not retain it. Because Part 123 is not void for vagueness as applied, plaintiffs' facial challenge necessarily fails. In any event, Part 123 provides comprehensible standards and plaintiffs identify no plausible risk of arbitrary enforcement based on the regulation's purported vagueness.

IV. The district court correctly dismissed Greco's personal free speech claim. Greco's general desire to support the school community is not a matter of public concern entitled to First Amendment protection. And the district court correctly declined to consider his current argument that he wears prohibited apparel in protest of Part 123 because that argument is not supported by any facts alleged in the complaint.

Even if Greco could establish that his expressive activity involves a matter of public concern, his claim would still fail because NYSED's compelling state interest in establishing a learning environment free from discrim-

ination and harassment outweighs Greco's generalized interest in support-
ing the school community at school events by wearing prohibited apparel—
a message easily conveyed through other means. Moreover, allowing school
officers and employees to utilize and promote prohibited public school
names, logos, or mascots while on school property or at school functions
would undermine Part 123 and impose detrimental impacts "on the actual
operation" of NYSED and the State's schools. *See United States v. National
Treasury Emps. Union*, 513 U.S. 454, 465 (1995).

## ARGUMENT

### POINT I

#### MUNICIPAL PLAINTIFFS LACK CAPACITY TO CHALLENGE THE CONSTITUTIONALITY OF STATE REGULATIONS

The question of capacity addresses whether a party that "possesses
an enforceable right may act as a litigant." *Fund Liquidation Holdings
LLC*, 991 F.3d at 382. Federal Rule of Civil Procedure 17(b) provides that
capacity is determined as a matter of state law. Under well-settled New
York law, "municipalities and other local governmental corporate entities
and their officers lack capacity to mount constitutional challenges to acts
of the State and State legislation." *City of New York*, 86 N.Y.2d at 289;

21

*see Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377, 383 (2017) (*World Trade Ctr. II*). This rule against municipal corporation capacity extends to school districts, school boards, and officials acting on behalf of school districts or boards. *E.g.*, *City of New York*, 86 N.Y.2d at 290-91; *Matter of Board of Educ. of Roosevelt Union Free Sch. Dist. v. Board of Trs. of State Univ. of N.Y.*, 282 A.D.2d 166, 172 (3d Dep't 2001); *see* N.Y. Gen. Constr. Law § 66(2) ("A 'municipal corporation' includes a county, city, town, village, and school district.").

The New York Court of Appeals has recognized "the manifest improbability that the legislature would breathe constitutional rights into a public entity and then equip it with authority to police state legislation on the basis of those rights." *World Trade Ctr. II*, 30 N.Y.3d at 385 (citation and quotation marks omitted). New York courts thus exercise "extreme reluctance" before they will "intrude in the political relationships between the Legislature, the State and its governmental subdivisions." *City of New York*, 86 N.Y.2d at 296.

New York law recognizes four narrow exceptions to the general rule against municipal corporations' capacity. A municipal corporation may challenge the constitutionality of a state statute or regulation if: (i) there

22

is express statutory authorization for the suit; (ii) "the State legislation adversely affects a municipality's proprietary interest in a specific fund of moneys"; (iii) "the State statute impinges upon the Home Rule powers of a municipality" under the New York Constitution; or (iv) the municipality's compliance with the statute would force the municipality to "violate a constitutional proscription." *City of New York*, 86 N.Y.2d at 291-92 (quotation marks omitted); *see In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 846 F.3d 58, 63-64 (2d Cir. 2017) (*World Trade Ctr. I*). Here, municipal plaintiffs attempt to invoke only the constitutional-proscription exception. (A. 216 & n.9.) The district court correctly concluded that municipal plaintiffs fail to establish that the exception applies here. (*See* A. 214-227.)

To qualify for the exception, a municipal corporation must demonstrate that, "if it is obliged to comply with the statute, that very compliance will force the corporation to violate a constitutional proscription." *World Trade Ctr. I*, 846 F.3d at 63-64. And the municipal corporation must pinpoint the specific future conduct required by the challenged state law that would cause the corporation to violate the Constitution. *See Clarke v. Town of Newburgh*, 237 A.D.3d 14, 30 (2d Dep't 2025), *appeal*

23

*pending*, No. APL-2025-00110 (N.Y.) (argued Oct. 14, 2025); *Blakeman v. James*, No. 24-cv-1655, 2024 WL 3201671, at *14 (E.D.N.Y. Apr. 4, 2024).

Municipal plaintiffs failed to plausibly allege that complying with Part 123 would force them to violate a constitutional proscription. Municipal plaintiffs assert two claims: (i) that Part 123 is void for vagueness under the Fourteenth Amendment Due Process Clause and (ii) that Part 123 is overbroad under the First Amendment as incorporated against the State by the Fourteenth Amendment. Both claims center on allegations that Part 123 is purportedly insufficiently clear as to which names, logos, and mascots are prohibited, and that the regulation prohibits too many names, logos, and mascots in relation to its goals. (*See* A. 85-89.) But none of municipal plaintiffs' allegations remotely suggest that changing their schools' logo and name to comply with Part 123 would cause them to violate any provision of the Constitution, or that their enforcement of Part 123 would infringe on others' constitutional rights.

Most of Part 123 regulates public schools' own conduct—not citizens' speech. Sections 123.1 through 123.4 concern public schools' use or display of Indigenous names, logos, or mascots and establish a timeline for compliance. 8 N.Y.C.R.R. §§ 123.1-123.4. These provisions fall squarely within

24

the State's authority to regulate the conduct of its municipal corporations, which are "purely creatures or agents of the State." *City of New York*, 86 N.Y.2d at 290. And allegations that Part 123 infringes on municipal plaintiffs' *own* purported rights do not establish that compliance would force them to "abridg[e] the freedom of speech" of any citizen, U.S. Const. amend. I, or "deprive any person of life, liberty, or property, without due process of law," *id.* amend. XIV, § 1. *Cf. Matter of County of Nassau v. State*, 100 A.D.3d 1052, 1055-56 (3d Dep't 2012) (county without enforcement role could not demonstrate that it would be forced to violate constitutional proscription).

Moreover, municipal plaintiffs have "'no privileges or immunities under the federal constitution'" which they may assert against the State. *Ysursa*, 555 U.S. at 363 (quoting *Williams v. Mayor of Baltimore*, 289 U.S. 36, 40 (1933)). As a "subordinate unit of government created by the State to carry out delegated governmental functions," a municipal corporation cannot challenge a State's alleged restriction of its speech under the First Amendment. *Id.*; *see Guthrie Nat'l Bank v. City of Guthrie*, 173 U.S. 528, 536 (1899) (explaining that "what the state could do itself, it has the power to direct its agent, the municipality, to do"). And controlling precedent

25

holds that municipal corporations cannot sue the State for alleged violations of the Fourteenth Amendment.[5] *See, e.g.*, *Williams*, 289 U.S. at 40; *City of Trenton v. New Jersey*, 262 U.S. 182, 188 (1923); *City of New York v. Richardson*, 473 F.2d 923, 929 (2d Cir. 1973); *Aguayo v. Richardson*, 473 F.2d 1090, 1100-01 (2d Cir. 1973). Here, municipal plaintiffs' constitutional claims arise either explicitly or necessarily under the Fourteenth Amendment. *See Gitlow v. New York*, 268 U.S. 652, 666 (1925) (explaining that Fourteenth Amendment incorporates First Amendment Free Speech Clause against States). These established principles of federal law further reinforce that municipal plaintiffs' constitutional claims against the State cannot proceed.[6]

---

[5] Plaintiffs misplace their reliance (Br. at 59) on *Washington v. Seattle School District No. 1*, in which the municipal plaintiffs sought to assert the rights of their citizens against unlawful discrimination. *See* 458 U.S. 457, 464-65 (1982). As explained below (at 27-28), municipal plaintiffs' Fourteenth Amendment claim is premised on a claimed violation of their *own* purported rights—not the rights of any citizen.

[6] Contrary to plaintiffs' assertion (Br. at 59), the capacity bar applies not only to challenges to state statutes but also to challenges to state agency regulations. *New York Blue Line Council, Inc. v. Adirondack Park Agency*, 86 A.D.3d 756, 758 (3d Dep't 2011); *see World Trade Ctr. II*, 30 N.Y.3d at 387.

On appeal, municipal plaintiffs do not attempt to explain how changing their schools' logo and team name to comply with Part 123 would cause them to violate a constitutional proscription. Municipal plaintiffs have thus waived any argument that they have capacity to challenge Part 123 insofar as it requires schools to eliminate Indigenous names, logos, and mascots.[7] *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005). Instead, plaintiffs suggest that enforcing § 123.5 will cause municipal plaintiffs "to violate the constitutional rights of their employees or face draconian penalties" (Br. for Appellants (Br.) at 57). But as the district court correctly found, the complaint contains no allegations to support this theory, which was first advanced in opposition to defendants' motion to dismiss. (*See* A. 225.)

*First*, the complaint does not allege that municipal plaintiffs will be required to enforce § 123.5 in a manner that would violate school officers'

---

[7] Municipal plaintiffs' assertion that enforcing Part 123 would require them to violate Title VI of the Civil Rights Act of 1964 (Br. at 58 n.9) is raised for the first time on appeal and thus waived. In any event, the constitutional-proscription exception requires municipal plaintiffs to demonstrate that they will be required to violate someone's constitutional, not statutory, rights. And the Supremacy Clause does not convert a claimed statutory violation into a constitutional one for this purpose. *See Merola v. Cuomo*, 427 F. Supp. 3d 286, 292 (N.D.N.Y. 2019).

27

and employees' due process rights. The complaint alleges that Part 123 is vague because the regulation fails to give notice sufficient to allow *school districts* to determine if their names, logos, or mascots are prohibited and allows NYSED to arbitrarily enforce the regulation against *school districts*. (*See* A. 86-87.) Similarly, plaintiffs contend that Part 123 lacks clear guidance as to whether the Warriors name is prohibited. Br. at 60. But these arguments do not speak to municipal plaintiffs' enforcement of § 123.5, which requires public schools to "prohibit school officers and employees when located on school property or at a school function from utilizing or promoting any Indigenous name, logo, or mascot," 8 N.Y.C.R.R. § 123.5. Before any enforcement under § 123.5 can occur, school districts must determine whether their names, logos, or mascots are prohibited and, if so, develop plans to eliminate them. *See id.* § 123.3. By that time, school officers and employees necessarily will have notice that the school's prior name, logo, or mascot has been eliminated and that the district may enforce § 123.5 against them. And municipal plaintiffs do not allege that they will enforce § 123.5 in an arbitrary manner after having determined that their name and logo are prohibited by the regulation.

*Second*, municipal plaintiffs fail to allege that their enforcement of § 123.5 will require them to violate individuals' free speech rights. The only claim that municipal plaintiffs assert under the First Amendment is an overbreadth claim. (*See* A. 85-89.) In support of that claim, the complaint alleges that Part 123 sweeps too broadly in that it purportedly requires some school districts to change names, logos, and mascots without an established record of unrest resulting from their use. (*See* A. 88.) But these allegations speak only to a school district's own compliance with Part 123 and its initial determination to eliminate Indigenous names, logos, and mascots—not the district's enforcement of § 123.5. Although municipal plaintiffs also allege that Part 123 "'creates an unnecessary risk of chilling the speech and expression of school employees, and the school community at large,'" the district court correctly found that this oblique and conclusory allegation did not show that municipal plaintiffs will be forced to violate a constitutional proscription. (*See* A. 225 (quoting A. 89).)

*Finally*, because "[a]ll overbreadth challenges are facial challenges," *Farrell v. Burke*, 449 F.3d 470, 498 (2d Cir. 2006), municipal plaintiffs must plausibly allege that their enforcement of § 123.5 will penalize a substantial amount of protected First Amendment activity relative to the regula-

29

tion's plainly legitimate sweep, *see United States v. Williams*, 553 U.S. 285, 292 (2008). To that end, plaintiffs argue that "the enforcement of Part 123 would result in a violation of school officials['] and employees' First Amendment free speech rights because it prevents their freedom of expression as parents and community members." Br. at 57. Yet plaintiffs do not dispute that § 123.5 lawfully may be enforced against school officers and teachers while they are acting in their official capacities on school property and at school functions. And plaintiffs nowhere allege that enforcing § 123.5 against school officers and teachers who are acting solely as "parents and community members" will comprise a substantial portion of overall enforcement activity. In any event, § 123.5 may be lawfully applied to school officers and teachers intending to act in their individual capacities, as here (see *infra* at 49-59). Accordingly, municipal plaintiffs failed to establish that § 123.5 on its face will cause them to violate a constitutional proscription.

## POINT II

### GRECO IN HIS PERSONAL CAPACITY LACKS STANDING TO CHALLENGE PART 123'S REGULATION OF PUBLIC SCHOOLS

Because municipal plaintiffs lack capacity to challenge Part 123, Greco in his personal capacity is the only plaintiff remaining. Greco in his personal capacity asserts three claims: (i) a First Amendment overbreadth claim, (ii) a Fourteenth Amendment void-for-vagueness claim, and (iii) a First Amendment free speech claim. Greco "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *See Davis v. FEC*, 554 U.S. 724, 734 (2008) (quotation marks omitted). For each claim, Greco cannot establish that he is injured by Part 123's requirement that public schools eliminate Indigenous names, logos, and mascots. Instead, he has standing to challenge only § 123.5, which regulates the conduct of school officers and employees.

To establish Article III standing, a plaintiff must plead an injury in fact that is concrete and particularized, meaning that the injury "must be real and not abstract" and "must affect the plaintiff in a personal and individual way." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (quotation marks omitted). "The plaintiff must also establish that the plaintiff's injury likely was caused or likely will be caused by the defendant's

31

conduct." *Id.* at 382. Where a plaintiff challenges the government's regulation of someone else, standing is "substantially more difficult to establish" and requires linking the plaintiff's asserted injuries to the regulation of the third party. *Id.* (quotation marks omitted).

Although the overbreadth doctrine provides a limited exception to the rule that a plaintiff may not bring suit to vindicate a third party's rights, a plaintiff asserting an overbreadth claim under the First Amendment still must demonstrate standing to sue. *Brokamp*, 66 F.4th at 389-90. The same is true for a plaintiff asserting a vagueness challenge under the Fourteenth Amendment. *See id.* at 389. Under these principles, the fact that a plaintiff has standing to challenge one regulatory provision does not automatically confer standing to challenge *other* aspects of the regulatory scheme that do not apply to that individual. *See id.* at 389; *United States v. Smith*, 945 F.3d 729, 737 (2d Cir. 2019).

Notwithstanding the limits of Article III standing, Greco in his personal capacity attempts to mount a broadside attack against Part 123 in its entirety—including provisions that have no application to him. For example, Greco argues that Part 123 is an unconstitutional prior restraint on speech because it prohibits public schools' use of Indigenous names,

logos, and mascots in a manner that is not narrowly tailored. Br. at 41-43. But Greco suing *in his personal capacity* has not suffered a concrete and particularized injury based on Part 123's restriction of *public schools' ability* to select a name or logo of their choosing. That aspect of Part 123 affects the conduct of public schools—not individual school officers and employees like Greco. And private citizens have "no First Amendment right to speak for the government." *Downs v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003, 1017 (9th Cir. 2000).

Moreover, "there is a fundamental misalignment between [Greco's] alleged injury and his legal claim." *See Smith*, 945 F.3d at 736. Greco's alleged injury is that he may no longer wear Warriors apparel to school games and functions. (A. 91-92.) That alleged injury flows entirely from § 123.5, which prohibits school officers from utilizing or promoting Indigenous names, logos, or mascots at school events. Greco therefore lacks standing to challenge any provision other than § 123.5 and may not parlay his

standing to challenge that specific provision into an attack on the entire regulatory scheme.[8] *See Brokamp*, 66 F.4th at 390.

Finally, plaintiffs' effort to expand Greco's free speech claim to include the entirety of Part 123 (*see* Br. at 38-43) is plainly an attempt to evade municipal plaintiffs' lack of capacity and is wholly at odds with the complaint's assertion of a free speech claim *only* as to § 123.5. (*See* A. 269 n.26; Br. at 25.) Because plaintiffs may not amend their complaint through their moving papers or appellate briefing, the Court should reject Greco's augmented free speech claim on this independent ground. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

-----

[8] Nor may Greco rely on the complaint's oblique allegation that Part 123 "creates an unnecessary risk of chilling the speech and expression of school employees, and the school community at large" (A. 89). The Supreme Court has made clear that a plaintiff cannot "establish standing simply by claiming that they experienced a 'chilling effect' that resulted from a governmental policy that does not regulate, constrain, or compel any action on their part." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 419 (2013).

## POINT III

### THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' OVERBREADTH AND VAGUENESS CLAIMS

If any of the plaintiffs had capacity and standing to challenge Part 123's prohibition on public schools' use of Indigenous names, logos, and mascots (§§ 123.1-123.4), their challenges based on overbreadth and vagueness would nonetheless be subject to dismissal for failure to state a claim. To the extent Greco in his personal capacity asserts overbreadth and vagueness challenges to § 123.5, those claims similarly fail.

### A. Part 123 Is Not Overbroad Under the First Amendment.

"A party alleging overbreadth claims that although a statute did not violate his or her First Amendment rights, it would violate the First Amendment rights of hypothetical third parties if applied to them." *Farrell*, 449 F.3d at 498. "All overbreadth challenges are facial challenges, because an overbreadth challenge by its nature assumes that the measure is constitutional as applied to the party before the Court."[9] *Id.* "Because

---

[9] Plaintiffs thus misunderstand the overbreadth doctrine when they argue that "Part 123 is Facially Vague and Overbroad as Applied." *See* Br. at 54. In any event, plaintiffs' arguments concerning Part 123's application to the Warriors name are meritless for the reasons explained *infra* at 36-37, 41-43.

invalidating *all* enforcement of a challenged law is strong medicine, the challenging party must demonstrate from the text of the law and from actual fact that a substantial number of instances exist in which the law cannot be applied constitutionally." *United States v. Thompson*, 896 F.3d 155, 163 (2d Cir. 2018) (alteration, quotation marks, and citations omitted). And "the statute must be overbroad not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* (quotation marks omitted).

As a preliminary matter, Part 123's prohibition on public schools' use of Indigenous names, logos, and mascots (§§ 123.1-123.4) does not implicate any protected speech and thus any overbreadth challenge to those provisions necessarily fails. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495-97 (1982). As explained above (at 25-26), municipal corporations like school districts and their officers have no enforceable First Amendment rights vis-à-vis their parent State.[10] *See Ysursa*, 555 U.S. at 363. And as plaintiffs did not dispute below (A. 252),

---

[10] Indeed, the district court observed that courts have questioned whether municipalities have *any* rights under the First Amendment. (A. 226 n.15.) This Court need not resolve that question here.

36

public schools' own use of their names, logos, and mascots is government speech that can be regulated by the State without restriction by the First Amendment. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009).

Absent any connection to protected speech, plaintiffs' generalized objections to Part 123 (e.g., that Part 123 is not narrowly tailored and unjustifiably prohibits names previously used with Indigenous imagery) amount to mere policy disagreements. *See* Br. at 46-47. In any event, plaintiffs have not attempted to show that the prohibited names, logos, and mascots they view as benign constitute a substantial portion of the names, logos, and mascots to which Part 123 applies. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (overbreadth doctrine does not apply "where the parties fail to describe the instances of arguable overbreadth of the contested law"). And plaintiffs do not dispute that Part 123 lawfully requires schools to eliminate logos and mascots like Wantagh's former logo (an image of a Native American in full headdress) and to eliminate the use of Indigenous names alongside such prohibited logos.

The only provision of Part 123 that arguably implicates protected speech is § 123.5, which regulates school officers and employees. But as the district court correctly concluded, the complaint contains only a "bare assertion that § 123.5 'reaches a substantial amount of constitutionally protected First Amendment activity through viewpoint and/or content-based restrictions' that subsequently chills free speech" (A. 250 (quoting A. 88)).

Plaintiffs argue that § 123.5 affects "all Wantagh school district employees," including, for example, a teacher who "wants to wear a shirt to her child's lacrosse game to support the Warriors against a neighboring rival." Br. at 48. But plaintiffs do not plausibly allege that hypotheticals involving off-duty school employees will implicate a substantial amount of protected speech in relation to Part 123's "plainly legitimate sweep." *See Thompson*, 896 F.3d at 163. Section 123.5 is plainly lawful as applied to school employees who are on duty while attending school events or on school property—as plaintiffs do not contest. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Because school officers and employ-

38

ees necessarily are on duty during much, if not most, of the time that they are "located on school property or at a school function," § 123.5 has a broad legitimate sweep and plaintiffs fail to establish that it is facially overbroad.

Finally, the district court was correct to hold that plaintiffs failed to allege that a substantial portion of the speech affected by § 123.5 involves matters of public concern. (A. 250.) As explained in detail below (at 53-56), the complaint alleges only that Greco wishes to wear Warriors apparel to support student athletes and the school community (A. 92). And those allegations are insufficient to plausibly allege that § 123.5 limits protected speech by Greco—much less that it does so in a substantial portion of its applications.

## B.   Part 123 Is Not Void for Vagueness Under the Fourteenth Amendment.

The Fourteenth Amendment's Due Process Clause guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, and entitles individuals "to be informed as to what the State commands or forbids," *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (quotation marks omitted). A statute is void for vagueness if (i) "'it fails to provide people of ordinary intelligence

a reasonable opportunity to understand what conduct it prohibits'" or (ii) "'it authorizes or even encourages arbitrary and discriminatory enforcement.'" *Slattery v. Hochul*, 61 F.4th 278, 294 (2d Cir. 2023) (quoting *Hill v. Colorado*, 530 U.S. 730, 732 (2000)). The vagueness doctrine applies primarily to criminal legislation, and "[l]aws with civil consequences receive less exacting vagueness scrutiny." *Arriaga v. Mukasey*, 521 F.3d 219, 222-23 (2d Cir. 2008).

This Court has recognized that "regulations need not achieve 'meticulous specificity' and may instead embody 'flexibility and reasonable breadth.'" *Rock of Ages Corp. v. Secretary of Labor*, 170 F.3d 148, 156 (2d Cir. 1999) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)). In this assessment, courts also consider whether the regulated party "may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." *Hoffman Estates*, 455 U.S. at 498; *see Copeland v. Vance*, 893 F.3d 101, 118 (2d Cir. 2018) (plaintiff's failure to verify whether regulation prohibited its conduct cut against finding of vagueness).

40

1. **Part 123 is not void for vagueness as applied to plaintiffs.**

Plaintiffs do not dispute that Wantagh's former logo is prohibited under Part 123; in fact, they "decided to retire the district's Native American imagery." Br. at 14. Instead, plaintiffs claim that Part 123's definition of "Indigenous name, logo, or mascot" is too vague to encompass their continued use of the name "Warriors." Br. at 54-55. The district court correctly rejected plaintiffs' as-applied challenge.

To begin, the district court correctly found that plaintiffs had adequate notice of what names and logos Part 123 prohibits. (A. 234-237.) The regulation defines "Indigenous name, logo, or mascot" to mean "a name, symbol, or image that depicts or refers to Indigenous persons, tribes, nations, individuals, customs, symbols, or traditions, including actual or stereotypical aspects of Indigenous cultures, used to represent a public school." 8 N.Y.C.R.R. § 123.1. As plaintiffs acknowledge, Wantagh adopted the name "Warriors" in 1956 concurrently with a logo depicting a Native American man "in full headdress." (A. 62.) Plaintiffs do not dispute that the Warriors name, as adopted in 1956 and as used in the seven decades that followed, in fact refers to Indigenous persons or aspects of Indigenous cultures within the meaning of Part 123. As the district court observed,

41

plaintiffs were "on notice of the pre-existing history tying the Warriors' name to actual or stereotypical aspects of Indigenous peoples." (A. 236.) "A reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve," would have fair notice that both Wantagh's name and logo are prohibited under Part 123. *See Rock of Ages*, 170 F.3d at 156.

There is no merit to plaintiffs' argument that the "use of the Warriors name will not implicate the plain language of Part 123" if the Indigenous imagery is retired. *See* Br. at 55. NYSED's guidance addresses this precise question, i.e., "Can my district keep our team's name if it eliminates all associated Indigenous imagery?" (*See* A. 29.) The guidance explains that schools whose names were previously associated with Indigenous imagery or symbols "must change their team's name," because such names continue to refer to Indigenous persons or cultures within the meaning of Part 123 in light of their prior history and connotation. (*See* A. 29.)

If any doubt remained as to whether Wantagh's name and logo are prohibited, plaintiffs' complaint acknowledges that Wantagh consulted NYSED about their proposal to retain the Warriors name, and that request was denied. (A. 71.) Both the NYSED guidance and Wantagh's direct

42

consultation with NYSED served to "clarify the meaning of the regulation" and to dispel any concern that plaintiffs lacked notice that their use of the Warriors name violates Part 123. *See Hoffman Estates* 455 U.S. at 498; *Advance Pharm., Inc. v. United States*, 391 F.3d 377, 397 (2d Cir. 2004) (vagueness challenge failed where plaintiff received confirmation of statutory interpretation from government); *JWJ Indus. v. Oswego County*, 538 F. App'x 11, 12 & n.1 (2d Cir. 2013) (same where plaintiff corresponded with county to confirm interpretation of local law).

Finally, Greco cannot show that he lacks notice that he is prohibited from wearing his Warriors apparel following the school board's formal resolution committing to "eliminate the use of the 'Warrior' team name in accordance with Part 123." (*See* A. 199.)

## 2. Part 123 is not void for vagueness on its face.

A facial vagueness challenge "will succeed only when the challenged law can never be validly applied." *Vermont Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 128 (2d Cir. 2018). Plaintiffs do not attempt to meet this demanding standard, and they cannot do so. The fact that Part 123 is not void for vagueness as applied to plaintiffs (see *supra* at 41-43) necessarily defeats their facial challenge. *See Brokamp*, 66 F.4th at 403. Simi-

larly, plaintiffs' acknowledgment that Part 123 clearly prohibits their continued use of a logo depicting a Native American man constitutes another undisputably valid application of the regulation. (*See* A. 70.)

Plaintiffs' assertion that they need demonstrate only that Part 123 "reaches a substantial amount of constitutionally protected conduct" (Br. at 49 (quotation marks omitted)) mistakenly applies the standard for overbreadth claims to their facial vagueness claim. But a "vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression," because otherwise the vagueness and overbreadth doctrines "would be substantially redundant." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010). And conducting a "heightened" vagueness review for regulations implicating the First Amendment does not involve relaxing the standard applicable to facial challenges.[11] *See Brokamp*, 66 F.4th at 403 & n.28.

Plaintiffs' remaining arguments in support of their facial vagueness claim are meritless. *First*, plaintiffs are wrong to argue (Br. at 50-51) that

_____

[11] As explained above (at 36-37), Part 123 does not implicate the First Amendment insofar as it regulates a school district's choice of name, logo, or mascot.

44

Part 123 does not reasonably describe what conduct is prohibited. To the contrary, Part 123's definition of "Indigenous name, logo, or mascot" is particular and the regulation clearly explains the circumstances under which it applies. *See Brokamp*, 66 F.4th at 404. Specifically, Part 123 prohibits public schools from using a defined category of names, logos, and mascots for school sports teams and similar entities; provides a clear timeline for compliance; and specifies the limited circumstances in which school officers and employees are prohibited from using such names, logos, and mascots. *See* 8 N.Y.C.R.R. §§ 123.1-123.5. Plaintiffs object that Part 123 does not separately define the terms "name," "symbol," "image," "custom," or "tradition."[12] Br. at 50. "But a statutory term is not impermissibly vague simply because it lacks a statutory definition." *United States v. Concepcion*, 139 F.4th 242, 250 (2d Cir. 2025); *see also Grayned*, 408 U.S. at 110 (statute's scope need not be defined with "mathematical certainty").

---

[12] Plaintiffs' further contention that the regulation does not "explain the difference between a stereotypical aspect of Indigenous culture, as opposed to a representation that is accurate and respectful" (Br. at 50) is irrelevant, because both "actual and stereotypical" representations are prohibited, 8 N.Y.C.R.R. § 123.1.

And there is no likelihood that anyone would misunderstand the common terms at issue here. *See Hill*, 530 U.S. at 732.

Plaintiffs' attempt to identify hypotheticals at the periphery of the regulation (*see* Br. at 51) misses the mark. This approach ignores that "a party pursuing a facial challenge must plausibly allege that a legal requirement is 'vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Brokamp*, 66 F.4th at 405 (quoting *Hoffman Estates*, 455 U.S. at 495 n.7). In other words, a statute that is facially void for vagueness "simply has *no* core." *Hoffman Estates*, 455 U.S. at 495 n.7. Plaintiffs have not plausibly alleged that Part 123 constitutes such a regulation. Their argument that "anything could arguably fall under the regulation" (Br. at 51) wrongly ignores the text of the regulation, the regulatory context, and the goals the regulation seeks to achieve. *See Rock of Ages*, 170 F.3d at 155-56; *see also United States v. Farhane*, 634 F.3d 127, 142 (2d Cir. 2011). Plaintiffs further ignore NYSED's guidance, which addresses many of plaintiffs' hypotheticals. (*See* A. 29 (explaining that "logos that incorporate symbols associated with

Indigenous peoples such as feathers, historical weapons like tomahawks or spears, . . . or traditional Indigenous clothing are prohibited").)

*Second*, plaintiffs are incorrect to argue that Part 123 is vague because it requires school boards to determine the regulation's application in the first instance. *See* Br. at 51. Plaintiffs' suggestion (*id.*) that school boards must "guess" at whether their names, logos, or mascots are prohibited "and then face dire consequences if they guess wrong" is belied by the record. Again, this argument ignores NYSED's detailed guidance. (*See* A. 28-34.) And it also ignores that NYSED offers to "help answer any questions regarding [Part 123] and its implementation." (A. 28.) Here, for example, plaintiffs consulted with NYSED about their plan to retain the Warriors name, and that plan was rejected. (A. 71.) There is no basis for plaintiffs' speculation that school districts risk sudden sanctions if they misconstrue Part 123.

*Third*, plaintiffs fail to identify any inconsistency between the text of Part 123 and NYSED's guidance. Plaintiffs object (Br. at 52) to the guidance's clarification that Part 123 prohibits names, logos, and mascots that have connections to Indigenous peoples "in the past or at present." (A. 26.) But this guidance simply explains how to determine whether a "name,

symbol, or image . . . depicts or refers to" Indigenous peoples or cultures under § 123.1, and nothing in the regulation's text prohibits examining the history and connotation of the name, logo, or mascot at issue. *See* 8 N.Y.C.R.R. § 123.1. The guidance reflects a reasonable construction of the regulation in light of the agency's stated goals.

*Fourth*, plaintiffs' argument that Part 123 encourages arbitrary enforcement consists of their mere disagreement with the policies reflected in the regulation's clear terms. For example, plaintiffs take issue (Br. at 53-54) with regulatory exceptions that (i) allow school districts to use an Indigenous name, logo, or mascot with approval from an affiliated tribe and (ii) allow school officers or employees who are members of a tribal nation to utilize or promote an Indigenous name, logo, or mascot associated with that tribal nation. *See* 8 N.Y.C.R.R. §§ 123.4(b), 123.5. But plaintiffs do not dispute that these exceptions are perfectly clear; plaintiffs just disagree with the existence of these exceptions.

*Finally*, as to Greco, plaintiffs fail to advance any argument explaining how § 123.5's prohibition on utilizing or promoting Indigenous names or logos while on school property or at school functions fails to provide school officers and employees with adequate notice. Part 123 is

48

designed to allow school boards to first determine whether their names, logos, or mascots must be eliminated and to establish a plan for doing so. *See* 8 N.Y.C.R.R. § 123.3 (setting forth compliance timelines). Thus, before § 123.5 is enforced, school officers and employees will necessarily already know whether their schools' names or logos have been affected. Nor does Greco allege that school officers and employees will be subject to arbitrary enforcement.

## POINT IV

### THE DISTRICT COURT CORRECTLY DISMISSED GRECO'S FIRST AMENDMENT FREE SPEECH CLAIM

"[W]hen government acts as an employer, the constraints of the First Amendment are less severe and must leave government free to impose reasonable restrictions on its employees in the interest of safe, efficient, and harmonious delivery of services to the public." *Scott v. Meyers*, 191 F.3d 82, 87 (2d Cir. 1999). Accordingly, the government "may impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." *National Treasury Emps. Union (NTEU)*, 513 U.S. at 465.

49

Courts utilize a two-step framework to determine whether a government employee's speech is entitled to First Amendment protection. The first step (which has two subparts) is to determine (i) "whether the subject of the employee's speech was a matter of public concern" and (ii) "whether the employee spoke as a citizen rather than solely as an employee." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quotation marks omitted). "If the answer to either question is no, that is the end of the matter," and the speech may properly be regulated without violating the First Amendment. *Id.* If the answer to both questions is yes, then the court proceeds to balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). To justify a prospective regulation of government employee speech, "the Government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *NTEU*, 513 U.S. at 468 (quoting *Pickering*, 391 U.S.

50

at 571); *see Latino Officers Ass'n, N.Y., Inc. v. City of New York*, 196 F.3d 458, 463-65 (2d Cir. 1999).

## A. The Supreme Court's Precedents on Government Employee Speech Apply to This Case.

As a preliminary matter, the district court correctly concluded that the Supreme Court's precedents concerning government employee speech apply to this case. (*See* A. 265-266 n.24.) Section 123.5 regulates only the conduct of "school officers and employees," and Greco does not dispute that the regulation applies to him for that reason. The State's interest "in promoting the efficiency of the public services it performs" applies with full force with respect to the conduct of school board members. *See Pickering*, 391 U.S. at 568. "The Commissioner is charged with the general supervision of boards of education of union free school districts and their management and conduct of all departments of instruction," *Matter of Board of Educ., Commack Union Free Sch. Dist. v. Ambach*, 70 N.Y.2d 501, 510 (1987), and may remove a school board member who willfully disobeys state regulations, Educ. Law § 306.

Greco's primary argument against applying the established rules governing public employee speech is that he is a "volunteer board mem-

ber"—i.e., an unpaid official—to whom the rules do not apply. Br. at 31. But Greco cites no authority for the proposition that the rules do not apply to volunteers, and the district court rightly rejected it. The framework governing public employee speech applies equally to government volunteers.[13] *Sullivan v. University of Wash.*, 60 F.4th 574, 581 (9th Cir. 2023); *see Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 549, 551-57 (2d Cir. 2001) (youth program volunteers).

Greco is also mistaken to suggest that the legal framework governing public employees applies only to First Amendment retaliation claims. *See* Br. at 29-31. The Supreme Court has explained that although its cases concerning government employee speech usually have arisen in the context of retaliation claims, the same general framework likewise applies to other restrictions on employee expression. *NTEU*, 513 U.S. at 466-68; *see Latino*

---

[13] Some courts have questioned whether the Supreme Court's precedents governing public employee speech apply to the speech of elected officials. *See, e.g.*, *Boquist v. Courtney*, 32 F.4th 764, 778-80 (9th Cir. 2022); *Werkheiser v. Pocono Township*, 780 F.3d 172, 177-81 (3d Cir. 2015). Other courts have applied *Pickering* in that context. *See, e.g.*, *Siefert v. Alexander*, 608 F.3d 974, 984-88 (7th Cir. 2010). Greco waived any such argument here because he relies solely on his volunteer status in contending that the rules governing public employee speech do not apply and advances no legal argument based on his status as an elected official. *See JP Morgan Chase Bank*, 412 F.3d at 428.

*Officers Ass'n v. Safir*, 170 F.3d 167, 171-72 (2d Cir. 1999); *Kirkpatrick v. Village of Washingtonville*, 491 F. App'x 214, 215-16 (2d Cir. 2012).

## B. Greco Did Not Plausibly Allege That His Speech Involves a Matter of Public Concern.

Greco failed to plausibly allege that wearing his Warriors apparel constitutes speech regarding a matter of public concern, as required to state a First Amendment claim. "To constitute speech on a matter of public concern, an employee's expression must be fairly considered as relating to any matter of political, social, or other concern to the community." *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 84 (2d Cir. 2022) (quotation marks omitted); *see Connick v. Myers*, 461 U.S. 138, 146 (1983). "Courts may consider a speaker's motive as part of this analysis," as well as "the forum and manner in which an employee makes a statement." *Shara*, 46 F.4th at 84; *see Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999). Speech "does not involve a matter of public concern when it principally focuses on the speaker's personal issues, . . . even if it also incidentally touches on a matter of general importance." *Shara*, 46 F.4th at 85 (quotation and alteration marks omitted).

Here, Greco alleges that he wishes to wear prohibited Wantagh Warriors apparel "to demonstrate pride in and support for his school, teams, and programs." Br. at 34 (citing A. 90-92). The district court correctly concluded that this allegation did not plausibly allege that Greco's expressive conduct involves a matter of public concern. (A. 267-269.) Greco's purported demonstration of pride is a "broad statement of cultural values" rather than a "particularized message." *See Zalewska v. County of Sullivan*, 316 F.3d 314, 319 (2d Cir. 2002). And it does not involve any matter "that is a subject of legitimate news interest," i.e., "a subject of general interest and of value and concern to the public." *See City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004) (per curiam).

Separately, Greco's prohibited apparel adds "no independent or incremental expressive value" to his purported statement of support for the community. *See Church of the Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 208 (2d Cir. 2004) (where "statute banning conduct imposes a burden on the wearing of an element of an expressive uniform, which element has no independent or incremental expressive value, the First Amendment is not implicated"). Greco may just as easily communicate his support for the school community through his presence at events, cheer-

ing on the students, and donning Wantagh apparel that does not feature prohibited Indigenous names or logos.[14]

Plaintiffs' cited cases are inapposite. In *Piscottano v. Murphy*, the plaintiffs "repeatedly consort[ed] with" a motorcycle club and wore its "colors and apparel in public." 511 F.3d 247, 276 (2d Cir. 2007). Those plaintiffs' expression was a matter of public concern because law enforcement believed the club to engage in criminal activity, the plaintiffs' activities were subject to investigation following a public complaint, and the particular "officers' association with the [club] was the subject of a freedom-of-information inquiry from the press." *Id.* No such circumstances exist here. And in *Latino Officers Association v. City of New York*, the Court determined that "plaintiffs' interest in communicating ethnic pride as members of the NYPD [was] not necessarily a matter *only* of private concern" where they wished to express that message in a march "about ethnic pride" and thereby celebrate "ethnic participation in the police force." 196 F.3d at 466 (emphasis added). Here, by contrast, Greco did not allege that his expressive activity advanced any "'political or social point of view.'" *See Agosto*

---

[14] The same is true with respect to Greco's allegation that he wears "specialty Warriors apparel in remembrance of 9/11." *See* Br. at 36.

*v. New York City Dep't of Educ.*, 982 F.3d 86, 95 (2d Cir. 2020) (quoting *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 398 (2011)).

As the district court correctly concluded, Greco may not rely on his purported desire to protest Part 123 because he failed to allege any facts to support that contention. (*See* A. 268 n.25.) Greco's argument about purportedly wanting to protest (*see* Br. at 34-35 & n.5) appears nowhere in the complaint. In similar circumstances, this Court has "take[n] the relevant speech at face value as alleged" in the complaint and refused to entertain new interpretations of the speech that are not articulated in the complaint. *See Shara*, 46 F.4th at 87 & n.2. That same approach is appropriate here, especially considering that plaintiffs expressly declined the district court's invitation to amend their complaint to allege specific facts supporting Greco's free speech claim (A. 287) and chose instead to immediately appeal (Br. at 35 n.5). Because Greco failed to allege that his desire to wear Warriors apparel involves expression on a matter of public concern, he cannot establish a First Amendment violation. *See Shara*, 46 F.4th at 81.

## C. In Any Event, § 123.5 Satisfies the Balancing Test for Government Employee Free Speech Claims.

Even if Greco had plausibly alleged that he wants to speak about a matter of public concern and the Court were to proceed to apply the relevant balancing test, Greco nonetheless failed to allege that his interest in personal expression while off duty at school events outweighs the State's interest in implementing Part 123. *See Latino Officers Ass'n*, 196 F.3d at 465 (considering "the parties' respective interests"). His First Amendment claim fails for this independent reason.

NYSED has a compelling state interest in ensuring a learning environment for all students that is free from disruption, discrimination, and harassment, as plaintiffs concede (Br. at 42). *See Grayned*, 408 U.S. at 119; *see also Bob Jones Univ. v. United States*, 461 U.S. 574, 593-94 (1983). To that end, New York law prohibits "the creation of a hostile environment . . . that reasonably causes or would reasonably be expected to cause . . . emotional harm to a student." Educ. Law § 11(7). NYSED reasonably concluded that the continued use of Indigenous names, logos, and mascots would violate DASA, particularly after a state court upheld NYSED's ruling in the *Cambridge* case. See *supra* at 7-8. And for more than two decades, NYSED has steadfastly maintained that the use of

57

Indigenous names, logos, and mascots is detrimental to school communities and students' academic achievement. In reaching this conclusion, NYSED relied on a wealth of academic research and consultation with Indigenous communities and residents across the State. See *supra* at 6-7.

Section 123.5's targeted restriction preventing school officers and employees from utilizing or promoting Indigenous names, logos, or mascots "when located on school property or at a school function," advances Part 123's goals by ensuring that school officials lead by example and refrain from perpetuating harmful speech. Section 123.5 further protects against the possibility that school officers and employees undermine NYSED's regulations while in the presence of students. That concern is especially acute for high-ranking officials like Greco. In these respects, § 123.5 aids in "maintaining efficiency, discipline, and integrity, preventing disruption of operations, and avoiding having the judgment and professionalism of the agency brought into serious disrepute." *See Piscottano*, 511 F.3d at 271.

Plaintiffs discount NYSED's interests as conjecture because the agency allegedly did not provide examples of DASA violations at Wantagh's schools. Br. at 37-38. But "[e]vidence that such harms or disruptions have in fact occurred is not necessary." *Piscottano*, 511 F.3d at 271. "The

58

employer need only make a reasonable determination that the employee's speech creates the potential for such harms." *Id.*

Rather than advance any argument concerning NYSED's interest in the enforcement of § 123.5, plaintiffs argue that Part 123 in general is not narrowly tailored because it allows Wantagh to retain the name of its school ("Wantagh") but not the name of its sports team ("Warriors") and contains other exceptions. Br. at 42-43. But as explained above, Greco lacks standing to challenge Part 123's regulation of public schools' choice of names, logos, and mascots. See *supra* at 31-34. And public schools' own use of their names, logos, and mascots is unprotected government speech. See *supra* at 36-37. In any event, NYSED explained that while "[s]chool districts within the United States have historically reduced Native Americans to caricatures in the form of team names, logos, and mascots, . . . there is no comparable tradition with respect to the legal names of school buildings or districts."[15] (A. 104.)

---

[15] Contrary to plaintiffs' assertion (Br. at 41), Part 123 reasonably allows for exceptions to its prohibitions on Indigenous names, logos, and mascots with the approval of an associated tribe—an indication that the name, logo, and mascot are unlikely to result in the harms that Part 123 seeks to prevent. *See* 8 N.Y.C.R.R. § 123.4.

## CONCLUSION

The judgment of the district court should be affirmed.

Dated:  New York, New York
        November 10, 2025

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellees

By:  */s/ Stephen J. Yanni*
     STEPHEN J. YANNI
     Assistant Solicitor General

BARBARA D. UNDERWOOD
  *Solicitor General*
JUDITH N. VALE
  *Deputy Solicitor General*
STEPHEN J. YANNI
  *Assistant Solicitor General*
    *of Counsel*

28 Liberty Street
New York, NY 10005
(212) 416-6184

60

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Mary Quinn Moss, an employee in the Office of the New York State Attorney General, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 11,915 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

*/s/ Mary Quinn Moss*